# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* E. L. Thomas, Minor.

UNPUBLISHED
May 26, 2015

No. 323060
Oakland Circuit Court
Family Division
LC No. 14-818871-NA

Before: MURPHY, P.J., and STEPHENS and GADOLA, JJ.

PER CURIAM.

Respondent mother appeals as of right the circuit court order terminating her rights to the minor child under MCL 712A.19b(3)(g), (i), (j), and (l). We conditionally reverse and remand for a determination whether the notice requirements of the Indian Child Welfare Act (ICWA), 25 USC 1912(a), were met.

Respondent first claims that the trial court erred reversibly in holding termination proceedings prior to the completion of the ICWA notification process. At the preliminary hearing, respondent indicated that she had Indian heritage, specifically Cherokee and Blackfoot. The caseworker sent out notices to these tribes under the ICWA in which the names of the minor and her grandmother were misspelled. The worker testified that she then re-sent all of the notices with the correct spellings before the second preliminary hearing in early April 2014. The referee found that since the original notices were "only off by one letter," there was no violation under the ICWA in proceeding with termination. Because there were prior terminations, the Department of Human Services (DHS) sought termination at initial disposition pursuant to MCL 712A.19a(2)(c) and MCL 722.638(b)(*i*).

We find that conditional reversal and a remand are required because of notice deficiencies in the trial court file. In *In re Morris*, 491 Mich 81, 199-122; 815 NW2d 62 (2012), the Supreme Court held that the proper remedy for an ICWA notice violation was to conditionally reverse and remand for resolution of the notice issue because the circuit court file must contain the original or a copy of notices sent to the tribes and originals or legible copies of proofs of service received, such as the registered mail return receipt cards. *Id*. at 89. The record also should contain copies of all additional correspondence concerning the child's Indian heritage. *Id*. at 113-114.

In the case at bar, the record contains copies of some registered mail receipts and letters from Native American tribes. However, some of the letters state the correct spellings and some contain incorrect spellings of the child's name. Also, copies of letters sent by the caseworker to

the tribes are not included. At the termination hearing, the caseworker testified that she continued to receive notices from the tribes regarding whether the child had Indian heritage (all said no). Pointing to this testimony, respondent argues that a remand is required to determine the notice issue. We agree.

We find a remand necessary in accord with *Morris*, 491 Mich at 103-104, 114, 121-122. See also Anno, *Construction and Application of Indian Child Welfare Act of 1978*, 89 ALR5th 195. The record does not contain any notices or copies of notices sent to Native American tribes or the Bureau of Indian Affairs, or several items of correspondence mentioned by caseworkers at trial. This is a direct violation of the Supreme Court's directives in *Morris*. *In re Morris*, 491 Mich at 113-114. Without this information, it is impossible for this Court to determine whether proper notices were, in fact, sent. "[R]esponses to the ICWA notices without the notices are insufficient because it is impossible to determine from the responses alone whether the notices provided the tribe with relevant information and therefore with a meaningful opportunity to evaluate whether the dependent minor is an Indian child." *In re Louis S*, 117 Cal App 4th 622, 629; 12 Cal Rptr 3d 110 (2004).

It is the trial court's responsibility to insure that the file provided to this Court contains the notices and proofs of service as required by *Morris*, 491 Mich at 114. Reversal in this case is conditioned upon the resolution of the ICWA notice violation on remand. On remand, we direct the trial court to resolve the ICWA notice violation issue *anew*. *Id.* at 121-122. The record must contain the items required by the Supreme Court in *Morris*. The caseworker's testimony, that the notices were re-sent with proper spellings and information, does not enable this Court to resolve the issue, nor does it comply with the requirements in *Morris*.

Next, respondent claims that clear and convincing evidence did not support termination of her parental rights. We disagree. Clear and convincing evidence satisfied the statutory grounds under at least MCL 712A.19b(3)(g), (i), and (l). Under subsection (g), which requires a showing that respondent failed to provide proper care or custody and would be unable to do so within a reasonable time, the evidence showed that the child tested positive for cocaine and opiates at birth. While the opiates might have resulted from respondent's prescription medicines, the cocaine result necessarily reflected respondent's consumption of an illegal, harmful substance when respondent knew she was in late-term pregnancy. The baby's lack of withdrawal symptoms did not excuse respondent's behavior. There was testimony that it was too early to tell if the baby would suffer adverse effects from the mother's ingestion of drugs. As the court noted, respondent was given "multiple opportunities through multiple agencies" for ten years and had not shown she could get sober. Even respondent's mother's testimony showed that respondent had a severe drug problem that had included heroin as well as cocaine.

Grounds for termination were also shown under subsections (i) and (l). Subsection (l) does not require any evidence beyond a prior involuntary termination, which respondent had. Respondent's situation also satisfied subsection (i) because she was provided services previously and did not improve sufficiently to retain parental rights. In affirming the termination of respondent's parental rights to three older children under subsection (l) in 2013, this Court noted that respondent had previously had her rights to two other children terminated, had been terminated from parenting classes, failed to comply with random drug screening, and missed visitations. She also had a history of unresolved substance abuse and mental health issues.

Reunification services were not required because DHS's goal was termination. *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009). Because of the prior terminations, it was appropriate to seek termination at initial disposition in this case as well. MCL 712A.19a(2)(c); MCL 722.638.

During the instant hearings, the trial court repeatedly commented on respondent's demeanor as showing that she was highly medicated and seemed "very out of it." The trial court found that respondent had taken many prescription drugs, even on the day the child was born. She was also on probation and had not attended parenting classes or drug screens. Apparently, respondent had replaced the illegal drugs with prescription opiates and mood-altering substances, and was not any further along than she was when she went through the prior terminations.

We therefore reject respondent's arguments for finding that statutory grounds for termination were not proven. The trial court did not clearly err in finding clear and convincing evidence to satisfy the statutory grounds for termination under MCL 712A.19b(3)(g), (i), and (l). We need not decide whether sufficient evidence was presented under subsection (j). Only one subsection need be proven by clear and convincing evidence to terminate parental rights. *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

Finally, respondent claims that termination of her parental rights was not in the child's best interests. We disagree. The trial court analyzed the appropriate factors and its decision was not clearly erroneous. Respondent had been unable to conquer her long-standing drug problem, and there was little evidence that she might do so within a reasonable time, even with services. She had no bond with the baby. Although this was not her fault, DHS's decision not to foster a bond was appropriate, given the prior terminations and the goal of termination here. *HRC*, 286 Mich App at 463. DHS planned to place the child with one or more of her siblings. It was not in the child's best interests to wait while respondent tried to become an acceptable parent; respondent had a long history of being unable to do this, and there was no reason to expect a different result within a reasonable time. The court did not clearly err in its best-interest ruling.

Reversed and remanded for further proceedings as outlined in this opinion and in *Morris*, 491 Mich at 114, 121-122. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola

-3-