# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WESTEN, Minors.

UNPUBLISHED
May 19, 2016

No.   329463
Ingham Circuit Court
Family Division
LC No.   15-000786-NA

Before:  O'BRIEN, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

Respondent mother appeals from an order of the circuit court terminating her parental rights to three minor children pursuant to MCL 712A.19b(3)(c), (g), and (j).  We affirm.

Respondent argues that the trial court erred in finding statutory grounds for termination. We disagree.  "To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013).  "We review for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence." *Id.*; see also MCR 3.977(K).  "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App at 80.

MCL 712A.19b(3)(c) and (g) authorize termination under the following circumstances:

(c)   The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*)  The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received

-1-

notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

Termination of parental rights was proper under these subsections. Respondent is the biological mother of three children. Respondent's oldest daughter came under the jurisdiction of the court in August 2013, after respondent engaged in an altercation with her boyfriend's mother in front of the child that led to police intervention. The court removed the child and ordered respondent to comply with a service plan that required respondent to maintain suitable housing, establish a regular source of income, and participate in counseling and parenting-skills classes, among other mandates. Respondent's subsequent two children were removed from her care after their births. Petitioner initiated termination proceedings after the birth of respondent's third child.

The record shows that over two years had passed since the court's initial dispositional order in 2013, and respondent has not been able to fully comply with her service plan. As respondent points out, the record does show that respondent, who had a history of housing instability, had obtained housing three months before the termination hearing. However, the record also established that respondent's rent exceeded her verified income, even before factoring in utilities, food, and other living expenses; respondent offered no evidence to refute the discrepancy between her income and expenses. There was also evidence that respondent was about to lose her main source of income. In addition, while respondent's caseworker[1] testified that there were no current concerns regarding domestic violence, respondent's emotional volatility continued to be an issue, as evidenced by an outburst against the caseworker during parenting time the night before commencement of the termination hearing that resulted in the court's suspension of respondent's parenting time. Indeed, respondent had not fully satisfied the requirement in her service plan that she attend counseling, which was significant in light of her history of emotional outbursts and her established mental health conditions. There was also testimony regarding concerns with respondent's parenting abilities. Moreover, even assuming respondent had managed to substantially comply with her service plan, respondent's caseworker testified that respondent had not benefited from the services she received. Respondent must not only demonstrate that she participated in the services, but that she benefited from the services as

---

[1] Respondent alludes to concerns regarding the credibility of her caseworker's testimony based on the caseworker's inexperience and in light of testimony that the caseworker and respondent's relationship was strained. We defer to the trial court's determination regarding credibility of the witnesses in light of their special opportunity to observe the witnesses. *In re Moss*, 301 Mich App at 80.

well. See *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). Based on respondent's inability to make significant progress over the course of the case, there was no reasonable probability that she would be able to rectify these conditions or provide proper care and custody within a reasonable time. Accordingly, we conclude that the trial court did not clearly err in terminating respondent's parental rights pursuant to MCL 712A.19b(3)(c) and (g).

Respondent asserts that MCL 712A.19b(3)(c)(*i*) was not satisfied because the condition that led to adjudication, housing, had been resolved. We note that we are not convinced that unsuitable housing was the only issue that led to adjudication. Indeed, respondent's initial service plan required her to obtain housing and income, as well as attend counseling and parenting-skills classes, among other requirements. Further, as discussed *supra*, the concerns regarding respondent's housing had not been fully eliminated at the time of the hearing, particularly in light of testimony that respondent would soon be losing her income source and that the amount owed in rent exceeded her monthly income. Moreover, even assuming adjudication was primarily based on respondent's unsuitable housing, the additional conditions discussed would justify termination pursuant to MCL 712A.19(b)(c)(*ii*).

Respondent also claims that she should have been afforded more time to comply with her service plan and offered specialized services because of her documented mental health and cognitive problems, which amounted to a disability. However, respondent fails to establish inadequacy of services or entitlement to additional services. Moreover, it appears respondent was offered many services from different providers, but often rejected or failed to complete the services.[2] Respondent further asserts that termination of her youngest child, born shortly before the termination hearing, was improper because it was based primarily on the circumstances involving the other children. However, under the doctrine of anticipatory neglect, it is well established that "a parents' treatment of other children is indicative of how they would treat the child in question." *In re Foster*, 285 Mich App 630, 631; 776 NW2d 415 (2009). Finally, while the trial court also found that termination was proper pursuant to MCL 712A.19b(3)(j), only one statutory ground for termination is required, so it is unnecessary for us to address this statutory ground.

---

[2] We note the recent decision of this Court, *In re Hicks/Brown*, ___ Mich App ___; ___ NW2d ___ (2016) (Docket No. 328870), where this Court addressed the reasonableness of services in regard to a cognitively impaired parent. Unlike the circumstances presented by *In re Hicks/Brown*, here, petitioner evaluated respondent near the beginning of the case, and offered services with knowledge of her cognitive impairments, including counseling, parenting classes, and visitation. While respondent was referred to a course to complete her GED, her failure to do so was not a basis for the court's decision to terminate. Moreover, respondent does not specify any specific service that was not appropriate for her cognitive level, arguing only that she should have been afforded more time. However, respondent was provided continuing services for over two years, which was reasonable even considering her cognitive impairment. Furthermore, there was no record evidence that respondent's cognitive impairment prevented her from participating in or benefiting from services.

Respondent next argues that the trial court erred in finding that termination was in the children's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child[ren]'s best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012); MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child[ren] must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. This Court reviews the court's determination regarding the children's best interests for clear error. *In re Olive/Metts*, 297 Mich App at 40. "In deciding whether termination is in the child[ren]'s best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id.* at 41-42 (internal citations omitted).

In the instant case, there was evidence that the children and respondent did not have a strong bond, and that respondent did not display love, affection, or emotional ties to the children. Further, the evidence indicated that respondent did not have the ability to meet the needs of three small children. Indeed, while respondent had exercised parenting time during the proceedings, she had never been allowed unsupervised parenting time. The evidence also showed that the children needed stability, permanence, and finality, and that their foster home offered those advantages. The children were well bonded with their foster parents, and the foster home offered the oppurtunity for the siblings to stay together and to particiate in activities beneficial to their development. In most cases, it is in the best interests of the children to keep brothers and sisters together. *Id.* at 42. Accordingly, the trial court did not clearly err in its determination that termination of respondent's parental rights was in the best interests of the children.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood

-4-