*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. D. GATES, Minor.

UNPUBLISHED
July 21, 2025
9:53 AM

No. 369868
Wayne Circuit Court
Family Division
LC No. 2021-000427-NA

Before: MARIANI, P.J., and MURRAY and TREBILCOCK, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor child, LG, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (other conditions exist that could have led to adjudication), and (j) (reasonable likelihood the child will be harmed if returned to parent).[1] On appeal, respondent argues the trial court clearly erred by finding statutory grounds for termination existed and determining termination was in the best interests of LG. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The present case involves the termination of respondent's parental rights to LG. LG was born premature in April 2021, and shortly thereafter tested positive for numerous illegal substances and exhibited symptoms of drug withdrawal. LG was also missing a bone in his leg at birth, and he was hospitalized for several months. When LG was born respondent had a history of substance abuse that contributed to her previous involvement with petitioner, the Department of Health and Human Services ("DHHS"), that culminated in the termination of respondent's parental rights to another child, ML, in 2009.

---

[1] LG's father was also a party below, and his parental rights were terminated at the same time as respondent's. However, LG's father is not a party to this appeal.

-1-

Petitioner filed a petition to terminate respondent's parental rights within a month of LG's birth, raising allegations regarding respondent's substance abuse; lack of prenatal care during her pregnancy with LG; previous termination of her parental rights to ML; and lengthy criminal history, which included controlled-substance convictions. At the adjudication in August 2021, respondent testified she did not have employment, income, or transportation at that time, and the trial court found statutory grounds existed to terminate respondent's parental rights. But at the best-interest hearing the following month, the trial court found termination was not in LG's best interests, and respondent was given a parent-agency treatment plan (PATP). Two months later, in December 2021, it was discovered respondent was charged with four counts of kidnapping–child enticement, MCL 750.350; four counts of unlawful imprisonment, MCL 750.349b; motor vehicle–unlawful driving away, MCL 750.413; and receiving and concealing stolen property–motor vehicle, MCL 750.535(7), and was held on a $5 million bond.[2] Respondent was deemed incompetent to stand trial in May 2022, and she was not deemed competent until a year later.

DHHS filed a supplemental petition to terminate respondent's parental rights to LG in October 2023, alleging respondent failed to complete or benefit from her PATP. At the termination hearing several months later, foster-care worker Donna Howard testified that LG was diagnosed with autism; was nonverbal; had physical disabilities impacting his hip, legs, and feet; and was unlikely to ever be able to walk. According to Howard, LG's medical diagnoses impacted his mental, physical, and emotional development and would require life-long medical treatment. Howard expressed disbelief regarding respondent's understanding of the "severity" of LG's needs and ability to meet those needs; her ability to provide for LG in a reasonable time; and whether there was a bond between respondent and LG. By contrast, LG's foster parent met all of LG's medical needs, and LG looked to his foster parent for comfort. Accordingly, Howard believed it was in LG's best interests for respondent's parental rights to be terminated so his foster parent could adopt him.

The trial court ultimately found respondent did not comply with her PATP before she was incarcerated; respondent could not provide for LG's special needs; LG did not have the ability to bond with respondent; and respondent's mental health struggles prevented her from being able to successfully parent LG. Accordingly, the trial court found statutory grounds existed to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j), and termination was in the best interests of LG. This appeal followed.

## II. STATUTORY GROUNDS FOR TERMINATION

On appeal, respondent argues the trial court clearly erred by finding statutory grounds for termination existed. We disagree.

"We review for clear error the trial court's factual finding that there are statutory grounds for termination of a respondent's parental rights." *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and

---

[2] After the trial court terminated respondent's parental rights to LG, respondent pleaded guilty but mentally ill to the four charges of unlawful imprisonment. The remaining charges were dismissed.

firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, 347 Mich App 420, 425; 15 NW3d 287 (2023) (quotation marks and citation omitted). "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re Sanborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021) (quotation marks and citation omitted). "If the trial court did not clearly err by finding one statutory ground existed, then that one ground is sufficient to affirm the termination of respondent's parental rights." *Id*. at 273.

"Termination under MCL 712A.19b(3)(j) is appropriate when [t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." *In re Sanborn*, 337 Mich App at 279 (quotation marks and citation omitted; alteration in original). "The harm contemplated under MCL 712A.19b(3)(j) includes emotional harm as well as physical harm." *Id*. Here, the record clearly established LG has severe medical needs requiring life-long care and treatment. Howard's testimony indicated respondent neither understood the significance of LG's needs, nor knew how to care for these needs. Further, the record is unclear as to how respondent would be able to finance and transport LG to his numerous medical appointments even if she were not incarcerated, considering respondent lacked employment and transportation before her incarceration. Finally, respondent's parental rights to another child were previously terminated because of substance-use issues and physical neglect, for which respondent was offered services but failed to comply. See *In re Hudson*, 294 Mich App 261, 266; 817 NW2d 115 (2011) ("Evidence of how a parent treats one child is evidence of how he or she may treat the other children."). Respondent continued to struggle with substance-use issues at the time of LG's birth, and the record indicated she did not meaningfully participate in substance-use services until being incarcerated. The foregoing, taken together, demonstrates a reasonable likelihood that LG would be harmed if returned to respondent's care. Accordingly, we are not left with a definite and firm conviction the trial court clearly erred by determining statutory grounds existed to terminate respondent's parental rights under MCL 712A.19b(3)(c)(j). *Miller*, 347 Mich App at 425.[3]

## III. BEST INTERESTS

Respondent also argues the trial court erred by determining termination was in the best interests of LG. We disagree.

This Court reviews a trial court's best-interest determination for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Again, "[a] finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving

---

[3] Considering our conclusion that the trial court did not clearly err by finding a statutory ground to terminate respondent's parental rights under MCL 712A.19b(3)(j), we need not address the statutory grounds under MCL 712A.19b(3)(c)(*i*) or (c)(*ii*). See, e.g., *In re Sanborn*, 337 Mich App at 275 n 5 ("Because we conclude that the trial court did not clearly err in respect to [MCL 712A.19b(3)(c)(*ii*))], we need not address the statutory ground under MCL 712A.19b(3)(j).").

due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, 347 Mich App at 425 (quotation marks and citation omitted).

"The trial court must order the parent's rights terminated if [DHHS] has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the child[]'s best interests." *In re White*, 303 Mich App at 713. "The trial court should weigh all the evidence available to determine the child[]'s best interests." *Id*. This Court focuses on the child—not the parent—when reviewing best interests. *In re Atchley*, 341 Mich App at 346. When determining best interests,

> the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

Here, the record includes evidence of respondent's substance-use struggles, periods of mental instability, and lack of employment or income before her incarceration, all of which implicate respondent's ability to effectively parent LG. Although respondent participated in substance-use and mental-health services while in custody, there is no evidence that she had made progress in these areas in a manner related to her ability to parent LG, and she did not comply with her PATP before incarceration. At the termination hearing, Howard testified there was no bond between respondent and LG, Howard was unsure respondent fully comprehended the severity of LG's medical needs or knew how to treat or manage his conditions, and respondent would not be able to provide stability and permanency for LG in a reasonable time. By contrast, Howard's testimony, together with other evidence in the record, indicates LG was bonded with his foster parent, who met all of his medical needs and was willing to plan for him long term. Notably, when the trial court made its best-interest determination, LG was almost three years old and had lived with his foster parent for all but the first few months of his life.[4] Considering the foregoing, the trial court's finding that termination was in LG's best interests was not clearly erroneous. *Id*. at 713.

---

[4] As this Court has previously recognized, it is appropriate for a court to consider the advantages of an alternative home when making its best-interest determination. *In re White*, 303 Mich App at 713; *In re Foster*, 285 Mich App 630, 635; 776 NW2d 415 (2009).

## IV. CONCLUSION

For these reasons, we affirm.

/s/ Philip P. Mariani
/s/ Christopher M. Murray
/s/ Christopher M. Trebilcock